# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Mark E. Brown,**

    **Plaintiff,**

**v.**                                                                                             Case No. 17-cv-2390-JWL

**Unified School District No. 501,**

    **Defendant.**

## **MEMORANDUM & ORDER**

Plaintiff, a former teacher employed by defendant Unified School District No. 501, filed this lawsuit alleging that the school district, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, refused to rehire him based on his race and/or in retaliation for prior lawsuits he filed against the school district. This matter is presently before the court on defendant's motion for summary judgment (doc. 28) and plaintiff's motion to strike portions of defendant's motion for summary judgment (doc. 36). As will be explained, defendant's motion is denied in part and stricken in part and plaintiff's motion is granted.

*Facts*

The following facts are uncontroverted and, in large part, taken from the Tenth Circuit's opinions in prior appeals resolving disputes between these parties. Plaintiff is an African-American male who was employed by the school district from 1980 to 1996 as a physical education teacher and, for some of that time, as a basketball coach. During that period, he received a number of critical teacher evaluations, was transferred from coaching girls' basketball based on

a report of inappropriate sexual conduct,[1] and was discharged as a boys' coach due to performance issues. In 1991, plaintiff sued the school district for race discrimination and retaliation based on his transfer from girls' basketball coach to boys' basketball coach and his subsequent discharge from the boys' basketball position. The suit failed and he was ordered to pay attorney fees. *See Brown v. Unified Sch. Dist. 501*, 1995 WL 590605 (10th Cir.1995) ("*Brown I*"). He continued teaching in the school district until 1996, when he resigned his employment and relocated to Texas.

Plaintiff later returned to Kansas and, in June 2000, submitted an application to the school district for teaching and coaching jobs. The school district's human resources manager, Lynn King, interviewed plaintiff in August 2001. After the interview, Ms. King sent a letter to plaintiff relating Superintendent Dr. Robert McFrazier's decision that, due to plaintiff's past employment record with the school district, he "will not be considered for rehire by this district." Plaintiff continued to send letters to Ms. King about employment, who continued to reiterate defendant's decision that plaintiff would not be rehired. In 2004, plaintiff filed suit against the school district alleging failure-to-rehire based on race and retaliation. Judge Bostwick of this district granted summary judgment and held that the suit was untimely filed. The Circuit affirmed on appeal. *Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1185 (10th Cir. 2006) ("*Brown II*"). *Brown II* determined that plaintiff's claims were time-barred because he failed to file suit within the statutory time limit after the alleged discriminatory failure to rehire and, further, that his

---

[1] The record reflects that a female basketball player on the team coached by plaintiff reported to the district that plaintiff suggested that she should break up with her boyfriend, have a "candlelight dinner" with plaintiff and do "the wild thing" with him.

subsequent attempts to revisit those claims did not revive them. *Id.* at 1188. (employer's mere reiteration of a broad decision not to consider an applicant for any employment does not revive expired objections regarding its initial statement of that decision).

In the summer and fall of 2009, plaintiff applied for three positions with the school district: head coach, substitute teacher, and special education teacher. Plaintiff and his lawyer met with the school district's new superintendent, Dr. Kevin Singer, as well as the school district's attorney and a school board member. The possibility of rehiring plaintiff was apparently the subject of a school board meeting shortly thereafter. The school board was advised by counsel that it might face liability if plaintiff were hired and a sexual incident occurred between a student and plaintiff. On October 6, 2009, plaintiff's attorney received notice from the school district that plaintiff would not be considered for any position.

Plaintiff filed his third lawsuit against the school district in March 2010, alleging that the school district's refusal to hire him in the summer and fall of 2009 was based on his race and in retaliation for his prior two lawsuits. Judge Marten of this district granted the school district's motion for summary judgment on various alternative grounds, including that plaintiff's claims were time-barred because they were premised on the district's policy announced in 2001 that it would not rehire him; that plaintiff's claims were subject to dismissal pursuant to the doctrines of res judicata and collateral estoppel due to the preclusive effect of *Brown II*; that plaintiff failed to demonstrate that the district's proffered nondiscriminatory reason for not rehiring him was a pretext for unlawful discrimination; and that plaintiff failed to establish a prima facie case of retaliation because he did not present any admissible evidence that his prior protected activity was causally related to the district's decision not to rehire him. In *Brown III*, the Tenth Circuit affirmed

the grant of summary judgment on the grounds that plaintiff failed to establish pretext for his race discrimination claim and failed to establish a prima facie case of retaliation. *Brown v. Unified Sch. Dist. No. 501*, 459 Fed. Appx. 705 (10th Cir. 2012) ("*Brown III*").

On July 15, 2016, plaintiff submitted an online application for an open position as a substitute teacher in the school district's Special Education department. Plaintiff interviewed for the position with Dr. Jennifer Harrington, the district's Special Education coordinator. Dr. Harrington did not have knowledge of plaintiff's prior history with the district but, in any event, she recommended another candidate for the position. According to defendant, Dr. Harrington selected another candidate based on her assessment that the other candidate supplied more satisfactory responses in the interview process than plaintiff. In August 2016, plaintiff interviewed with the district's substitute coordinator, Ruth Marstall, who did not know that plaintiff had previously worked for the district. After the interview, Ms. Marstall referred plaintiff's application to the district's Human Resources department. While the record is not entirely clear, Ms. Marstall's testimony seems to reflect that she passed the application on to Human Resources for further consideration based on the fact that plaintiff had a current teaching certificate; the district was facing a shortage of teachers; and the district was "always looking for minority candidates." Once plaintiff's application reached Human Resources, Ms. Marstall was advised by that department that plaintiff was not eligible for rehire. Carla Nolan, defendant's General Director of Human Resources, testified that she was informed by her predecessor, Ms. King, that plaintiff was not eligible for rehire due to his job performance. Ultimately, plaintiff received an email from the district indicating that the district was not going to offer him a position.

4

Plaintiff now brings this lawsuit alleging that the school district, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, refused to rehire him based on his race and/or in retaliation for one or more of the prior lawsuits he filed against the school district.

*Standard*

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

*Motion to Strike*

In its motion, the school district contends that summary judgment is appropriate for numerous alternative reasons, including that plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel; that plaintiff's claims are barred by the applicable statutes of limitations; that plaintiff has failed to establish pretext for his race discrimination claim; and that

5

plaintiff has failed to establish a prima facie case of retaliation and has failed to establish pretext for his retaliation claim. In addition, defendant advances certain arguments for partial summary judgment on plaintiff's damages claim and his section 1981 claim.

As a threshold matter, plaintiff argues that the only appropriate issues before the court at this juncture are defendant's res judicata, collateral estoppel and timeliness arguments. He moves to strike those portions of the summary judgment motion that advance any other argument on the grounds that the magistrate judge, per the parties' agreement, bifurcated discovery in this case and contemplated an "early" summary judgment motion based solely on defendant's procedural defenses—res judicata, collateral estoppel and timeliness. The scheduling order entered by Judge O'Hara clearly supports plaintiff's position. In that scheduling order, Judge O'Hara declined to order mediation in light of "defendant's anticipated early motion for summary judgment (mainly based on a res judicata defense)" and approved a bifurcated discovery process that included a "first phase . . . to allow plaintiff only a reasonable opportunity to conduct the discovery needed to defend the anticipated Rule 56 motion." Significantly, Judge O'Hara expressly indicated that if the case survived that early motion, then he would confer with counsel and enter an amended scheduling order that established deadlines for the "completion of any remaining discovery, disclosure of experts, pretrial conference, summary-judgment motions directed at the merits, trial, etc." *See* ECF Doc. 15, p. 9.

Despite this clear language in the scheduling order, defendant asserts that the discovery conducted thus far clearly demonstrates that it is entitled to summary judgment on the merits and that nothing in the applicable rules precludes defendant from including additional arguments in the motion that it filed. While that may be true, Judge O'Hara and the parties in this particular

6

case contemplated a specific approach in which the procedural defenses would be resolved early on and the "merits" of the case would be resolved at a later date. The motion filed by defendant contravenes that agreed-upon approach and prejudices plaintiff by attempting to define (and possibly limit) the contours of plaintiff's claims without providing plaintiff's counsel, through the benefit of a pretrial conference and a subsequent pretrial order, an opportunity to frame plaintiff's claims, consistent with the facts developed through full discovery, on behalf of his client. The court, then, will strike as premature subparagraphs E, F, G and H from defendant's motion for summary judgment. Defendant, of course, may refile those portions of the motion by the deadline established by Judge O'Hara.

*Claim Preclusion and Issue Preclusion*

The court turns, then, to defendant's argument that summary judgment is required based on the doctrines of res judicata and collateral estoppel. "The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Id.* (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006)). To apply claim preclusion, "three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Id.*

Collateral estoppel, or issue preclusion, is designed to prevent needless relitigation and bring about some finality to litigation. *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim. *Id.* (citation omitted). Collateral estoppel will bar a claim if four elements are met: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Id*.

Because defendant has the burden of proving these affirmative defenses, *see United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017), the court will not bar plaintiff from asserting his claims unless defendant can show that plaintiff's claims reasonably could have been brought in one of plaintiff's prior lawsuits against the district or that a previously decided dispositive issue is identical to a dispositive issue in this case. Defendant has not met its burden. Unlike plaintiff's prior lawsuits, this lawsuit stems, at least in part, from plaintiff's application for a specific, open position in this district and defendant's particular hiring decision for that position. Defendant has come forward with no evidence that Dr. Harrington rejected plaintiff based on the district's 2001 no-rehire policy and, in fact, it is undisputed that Dr. Harrington had no knowledge of that policy. Rather, the facts reflect that Dr. Harrington rejected plaintiff's application after comparing his candidacy with another candidate whom she allegedly deemed more qualified. The record is also not clear whether Human Resources rejected plaintiff's efforts to obtain employment

8

as a substitute teacher based on the 2001 no-rehire policy or based more generally on plaintiff's prior job performance and an updated, independent assessment of that performance. Under these facts, defendant has not shown how plaintiff's claims reasonably could have been brought in one of plaintiff's prior lawsuits.

Similarly, the court rejects defendant's argument that Judge Bostwick's ruling on the timeliness issue is binding on plaintiff under collateral estoppel principles. As the Tenth Circuit explained in affirming Judge Bostwick's decision:

> [W]hen an initial discriminatory act is time-barred, a later related event is not actionable if it is merely a consequence of the first; to be actionable, the later event must involve an independent act of discrimination (which in certain circumstances may be inherent in the event, but otherwise requires explicit supporting allegations).
>
> . . . . While a time-barred discriminatory act will not make actionable (or be made actionable by) its later facially neutral consequences, such an act will not *preclude an action* for subsequent related act that would support suit on their own.

*Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1187 (10th Cir. 2006) (citations omitted) (emphasis in original). The factual record developed thus far reflects that at least some portion of plaintiff's claims involve an independent act of alleged discrimination that was not tied to the district's "once and for all" decision back in 2001. Stated another way, plaintiff has identified a factual basis for a claim that the district's 2016 hiring decisions reflected an independent act of alleged discrimination wholly unrelated to the 2001 policy. Accordingly, Judge Bostwick's ruling on the timeliness issue is not binding in this lawsuit. *See id.* at 1188 ("We hold only that an employer's mere reiteration of a broad decision not to consider an applicant for any employment does not revive expired objections regarding its initial statement of that decision.").

*Statute of Limitations*

For the same reasons, defendant has not shown that plaintiff's claims are time-barred. The argument rests again on the faulty premise that plaintiff's claims in this lawsuit are based solely on a reiteration of the district's 2001 no-rehire policy in response to general job inquiries made by plaintiff. Contrary to defendant's characterization of the facts, the record reflects that plaintiff applied for a specific, open position and that Dr. Harrington rejected his application not based on that policy but based on a substantive analysis of his qualifications for the position. The district's 2016 decision, then, is not merely a consequence of the 2001 policy but represents an independent act that is actionable on its own. It is undisputed that plaintiff's EEOC charge and his complaint were filed within the applicable limitations period when measured from the appropriate accrual date.

For the foregoing reasons, defendant's motion for summary judgment is denied in part and stricken in part.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 28) is denied in part and stricken in part; and plaintiff's motion to strike portions of defendant's motion for summary judgment (doc. 36) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties, within 14 days of this memorandum and order, shall submit an updated Rule 26(f) planning report to Judge O'Hara.

**IT IS SO ORDERED.**

Dated this 19th day of October, 2018, at Kansas City, Kansas.

                                                       s/ John W. Lungstrum
                                                       John W. Lungstrum
                                                     United States District Judge