# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARK E. BROWN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:17-cv-02390-HLT** |
| **UNIFIED SCHOOL DISTRICT NO. 501,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Mark E. Brown, a teacher formerly employed by Defendant Unified School District No. 501, filed this lawsuit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., alleging that Defendant refused to rehire him based on his race and in retaliation for a prior lawsuit he filed against Defendant. Defendant moves for summary judgment on all claims, or, in the alternative, for partial summary judgment on Plaintiff's claims for compensatory damages and front pay. Doc. 54.

The Court grants Defendant's motion for summary judgment in its entirety. First, the Court finds that, although Plaintiff has met the prima facie burden on his failure-to-hire claim, Plaintiff cannot rebut Defendant's legitimate, nondiscriminatory reasons for refusing to rehire him by showing that those reasons were mere pretext for discrimination. Second, the Court finds that Plaintiff cannot establish a prima facie case on his retaliation claim, and, even if he could, he again cannot show that Defendant's stated reasons for its no-rehire decision were pretext. The Court accordingly concludes that summary judgment is warranted.

# I. BACKGROUND[1]

## A. Employment and Litigation History

Plaintiff is an African-American male who Defendant—a school district serving the Topeka, Kansas area—employed from 1982 to 1996 as a physical education ("P.E.") teacher and, for some of that time, as a basketball coach. Doc. 55 at 2 ¶ 1; Doc. 60 at 2 ¶ 1. During his employment, Plaintiff received a number of critical teacher evaluations. Doc. 55 at 2-4 ¶¶ 2, 11-13, 15-17, 19; Doc. 60 at 2-3 ¶¶ 2, 11-13, 15-17, 19. The evaluations note concerns related to Plaintiff's professionalism, communication skills, and inappropriate comments to students. *Id.* In one evaluation, Principal Dr. Barbara Davis stated that, in her 27 years as an administrator, she found Plaintiff's performance as a P.E. teacher to be less than that of other teachers in the areas of professional skills, interpersonal relationships, and especially personal characteristics. Doc. 55 at 3-4 ¶ 13; Doc. 60 at 3 ¶ 13. In October 1991, Principal Dr. Abigail Calkin wrote a letter requesting Plaintiff be transferred to a different school due to doubts he could conduct a P.E. program that meets students' needs. Doc. 55 at 4 ¶ 16; Doc. 60 at 3 ¶ 16. Dr. Calkin stated that, for the benefit of the students, the school should have "a new and far better P.E. teacher." *Id.*

Defendant's concerns, however, were not limited to Plaintiff's performance as a teacher. In 1989, Plaintiff was removed from his position as a girls' basketball coach at Topeka High School based on a report of inappropriate sexual conduct. Doc. 55 at 3 ¶ 8; Doc. 60 at 2 ¶ 8. Specifically, the mother of one of the players complained to Principal Dr. Ned Nusbaum about comments Plaintiff made to her daughter, prompting an investigation by Defendant. Doc. 55 at 2 ¶ 3; Doc. 60 at 2 ¶ 3. Dr. Nusbaum's investigation summary states the female player told the

---

[1] For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to Plaintiff as the nonmoving party. The facts are taken from the pleadings, from the summary judgment briefing, and from opinions authored by this District and this Circuit in previous cases between these parties (referenced in Part I.A, *infra*, as Brown I, Brown II, and Brown III).

investigator that Plaintiff suggested she break up with her boyfriend, have a candlelight dinner with Plaintiff, and "do the wild thing" with Plaintiff. Doc. 55 at 2 ¶ 4; Doc. 60 at 2 ¶ 4. Another student corroborated this account. *Id.* Two other female students on the basketball team reported to Dr. Nusbaum that Plaintiff often told the girls to "stop dickin' around."[2] Doc. 55 at 2 ¶ 6; Doc. 60 at 2 ¶ 6. Defendant accordingly reassigned Plaintiff to an assistant coaching position with the boys' basketball team. Doc. 55 at 3 ¶ 9; Doc. 60 at 2 ¶ 9. However, Defendant later removed Plaintiff from that position due to performance issues. Doc. 55 at 3 ¶ 10; Doc. 60 at 3 ¶ 10.

In 1991, Plaintiff sued Defendant for race discrimination and retaliation based on his transfer from girls' basketball coach to boys' basketball coach and his subsequent discharge from the boys' basketball position. *See Brown v. Unified Sch. Dist. No. 501, Shawnee Cty., State of Kan.*, 1992 WL 105096 (D. Kan. 1992) ("Brown I"). The suit failed after the jury and Judge Richard Rogers of this District found in favor of Defendant, with Judge Rogers ruling that Plaintiff's transfer had nothing to do with his race or the fact that he had filed discrimination complaints. Doc. 55 at 6 ¶ 30; Doc. 60 at 4 ¶ 30. Defendant did not take any disciplinary or other action against Plaintiff following this ruling. Doc. 55 at 7 ¶ 34; Doc. 60 at 4 ¶ 34. Plaintiff continued working for Defendant until his resignation in 1996. *Id.*

Four years after his resignation, in 2000, Plaintiff applied to Defendant for re-employment. Doc. 55 at 5 ¶ 21; Doc. 60 at 3 ¶ 21. Defendant's General Director of Human Resources, Andrea Lynn King, interviewed Plaintiff. *Id.* After the interview, on August 27, 2001, Ms. King sent Plaintiff a letter relating Superintendent Dr. Robert McFrazier's decision that, "due to [Plaintiff's] past employment record with [Defendant]," he would not be considered for rehire. Doc. 55 at 5

---

[2] In this lawsuit, Plaintiff agrees that if a school district has an indication that a teacher has propositioned or asked out a student, that would be a reason to not want to hire him. Doc. 55 at 3 ¶ 7; Doc. 60 at 2 ¶ 7. Plaintiff also agrees it is highly inappropriate to say "stop dickin' around" to high school girls. *Id.*

¶ 22; Doc. 60 at 3 ¶ 22. Plaintiff nonetheless continued to send letters to Ms. King about employment, who, in turn, continued to reiterate that Plaintiff would not be rehired. Doc. 55 at 5-6 ¶¶ 24, 25, 27; Doc. 60 at 3-4 ¶¶ 24, 25, 27. In May 2003, after Plaintiff again asked to be rehired (this time, for a special education position at Highland Park High School), Ms. King sent a letter advising Plaintiff again that he "will not be considered for the position at HPHS or any other position in the Topeka Public Schools." Doc. 55 at 5-6 ¶ 27; Doc. 60 at 4 ¶ 27.

In 2004, Plaintiff sued Defendant again, this time alleging failure-to-rehire based on race and retaliation ("Brown II"). Doc. 55 at 7 ¶ 35; Doc. 60 at 4 ¶ 35. Judge Donald Bostwick of this District granted summary judgment in favor of Defendant and held that the suit was untimely filed. *See Brown v. Unified Sch. Dist. No. 501*, 2005 WL 6087359 (D. Kan. 2005). The Tenth Circuit affirmed on appeal. *See Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184 (10th Cir. 2006).

Nevertheless, Plaintiff, seemingly undeterred, continued to apply for teaching positions with Defendant. In 2009, Plaintiff applied for three separate positions within the school district: substitute teacher, special education teacher, and head girls' basketball coach. Doc. 55 at 7 ¶ 36; Doc. 60 at 4 ¶ 36. After Plaintiff's attorney received notice in October 2009 that Plaintiff would not be considered for any position, Plaintiff filed his third lawsuit against Defendant, alleging that Defendant's refusal to rehire him was based on his race and in retaliation for his prior lawsuits ("Brown III"). *See Brown v. Unified Sch. Dist. No. 501*, 2011 WL 2174948 (D. Kan. 2011). Plaintiff based his discrimination and retaliation claims in part on comments allegedly made by Defendant's outside attorney, Dave Mudrick, at a school board executive session on October 1, 2009, which were later characterized by Magistrate Judge Karen Humphreys as "run-of-the mill legal advice." Doc. 55 at 8 ¶¶ 39-40; Doc. 60 at 4 ¶¶ 39-40.

Judge Thomas Marten of this District ultimately granted summary judgment in favor of Defendant on various alternative grounds, including: that Plaintiff's claims were time-barred; that Plaintiff's claims were subject to dismissal pursuant to the doctrines of res judicata and collateral estoppel due to the preclusive effect of Brown II; that Plaintiff failed to demonstrate that Defendant's proffered reasons for not rehiring him were pretext for unlawful discrimination; and that Plaintiff failed to establish a prima facie case of retaliation because he did not present any admissible evidence that his prior protected activity was causally related to Defendant's decision not to rehire him. *See Brown*, 2011 WL 2174948, at *14-18. The Tenth Circuit affirmed, finding Plaintiff (1) failed to establish pretext for his race discrimination claim and (2) failed to show a causal connection between his protected activity and an adverse employment action sufficient to establish a prima facie case of retaliation. *See Brown v. Unified Sch. Dist. No. 501*, 459 F. App'x 705 (10th Cir. 2012).

###    B.    2016 Interviews

In the summer of 2016, Defendant was looking for substitute teachers qualified to fill positions for the upcoming school year. Doc. 60 at 10 ¶ 16; Doc. 61 at 6 ¶ 16. The requirements for employment as a substitute teacher with Defendant include that the candidate possess a current teaching certificate or be eligible to obtain one. Doc. 60 at 10 ¶ 18; Doc. 61 at 6 ¶ 18. Defendant also has a diversity initiative whereby it is committed to increasing the ratio of minority teachers to students in the school district. Doc. 60 at 10 ¶ 23; Doc. 61 at 7 ¶ 23.

On July 15, 2016, Plaintiff again reapplied with Defendant, submitting an online application for employment as a substitute teacher. Doc. 55 at 9 ¶ 47; Doc. 60 at 5 ¶ 47. In August 2016, Plaintiff interviewed with Dr. Jennifer Harrington, Defendant's General Director of Special Services and Special Education, for a special education teaching position with Defendant.

Doc. 60 at 9 ¶¶ 10, 12; Doc. 61 at 4-5 ¶¶ 10, 12. At the time of the interview, Dr. Harrington did not have knowledge of Plaintiff's prior history with Defendant. Doc. 55 at 9 ¶ 50; Doc. 60 at 5 ¶ 50. And Plaintiff did not disclose to Dr. Harrington that he was previously notified that he was not eligible for rehire. Doc. 55 at 9 ¶ 49; Doc. 60 at 5 ¶ 49. Plaintiff contends that, after the interview, Dr. Harrington said she would give his name to principals within the school district but Plaintiff never heard from anyone. Doc. 55 at 9 ¶ 48; Doc. 60 at 5 ¶ 48. Dr. Harrington ultimately recommended another candidate for the position: Mychal Moore. Doc. 55 at 9-10 ¶ 52; Doc. 60 at 5 ¶ 52. Dr. Harrington selected Mr. Moore rather than Plaintiff because Mr. Moore had a Master's degree, was a then-current teacher, and, based on her assessment, had more enthusiasm and knowledge than Plaintiff and provided more satisfactory responses in the interview process. *Id.* Like Plaintiff, Mr. Moore is African-American. Doc. 55 at 10 ¶ 53; Doc. 60 at 5 ¶ 53. Mr. Moore was hired for, and still holds, the position. *Id.*

Plaintiff also interviewed with Ruth Marstall, a recruiter for Defendant, in August 2016. Doc. 55 at 10 ¶ 54; Doc. 60 at 5 ¶ 54; Doc. 60 at 8 ¶ 4; Doc. 61 at 2-3 ¶ 4. At the time she interviewed Plaintiff, Ms. Marstall, like Dr. Harrington, did not know that Plaintiff had previously worked for Defendant, and Plaintiff did not disclose that he was not eligible for rehire. Doc. 55 at 10 ¶¶ 56-57; Doc. 60 at 5 ¶¶ 56-57. After the interview, Ms. Marstall forwarded Plaintiff's application for consideration for a full-time teaching position. Doc. 60 at 8 ¶ 5; Doc. 61 at 3 ¶ 5. Ms. Marstall's testimony reflects that she passed the application on for further consideration based on the fact that Plaintiff had a current teaching certificate and due to the district's diversity initiative. Doc. 60 at 8 ¶ 6; Doc. 61 at 3 ¶ 6. Ms. Marstall subsequently learned that Plaintiff was not eligible for rehire. Doc. 55 at 10 ¶ 58; Doc. 60 at 5 ¶ 58.

Offers for employment with Defendant are made through the Human Resources department. Doc. 55 at 11 ¶ 66; Doc. 60 at 6 ¶ 66. Defendant's current General Director of Human Resources, Carla Nolan (who also held the position in 2016), was informed by her predecessor, Ms. King, that Plaintiff was not eligible for rehire due to his job performance. Doc. 55 at 11 ¶ 67; Doc. 60 at 6 ¶ 67. Ms. Nolan's knowledge of Plaintiff's prior employment was limited to what Ms. King told her and the contents of Plaintiff's personnel file. Doc. 55 at 11 ¶ 68; Doc. 60 at 6 ¶ 68. Plaintiff's personnel file contained the August 2001 no-rehire letter, as well as Dr. Nusbaum's summary of the 1989 sexual misconduct investigation and Plaintiff's performance evaluations. Doc. 55 at 2-4, 11-12 ¶¶ 5, 11, 15-16, 69; Doc. 60 at 2-3, 6 ¶¶ 5, 11, 15-16, 69. Ultimately, Plaintiff received an email indicating that Defendant was not going to offer him a position. Doc. 55 at 10 ¶ 59; Doc. 60 at 5 ¶ 59. During Plaintiff's application process, no one at Defendant ever made any racist remarks or said Plaintiff was not hired due to his race. Doc. 55 at 12 ¶ 70; Doc. 60 at 6 ¶ 70.

Defendant agrees that the current superintendent, Dr. Tiffany Anderson, could change Plaintiff's eligibility status, but Dr. Anderson has not done so. Doc. 60 at 12 ¶¶ 32, 39; Doc. 61 at 10, 11-12 ¶¶ 32, 39. In connection with his latest attempt at reemployment in 2016, Plaintiff reached out to Dr. Anderson to discuss his reemployment with Defendant. Doc. 60 at 12 ¶ 33; Doc. 61 at 10 ¶ 33. Dr. Anderson subsequently forwarded Plaintiff's request to Ms. Nolan, and Ms. Nolan advised Dr. Anderson that Plaintiff was not eligible for rehire due to performance reasons. Doc. 60 at 12 ¶ 37; Doc. 61 at 11 ¶ 37. The decision not to reverse the August 2001 no-rehire decision was ultimately made by Ms. Nolan. Doc. 55 at 14 ¶ 84; Doc. 60 at 7 ¶ 84.

## C. Current Lawsuit

Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC"), and the EEOC issued Plaintiff a notice of right to sue letter on April 4, 2017.[3] Doc. 1 ¶ 4; Doc. 9 ¶ 4; Doc. 1-1. Plaintiff now brings the current action against Defendant—his fourth—alleging that Defendant, in violation of Title VII, refused to rehire him based on his race and in retaliation for the 1991 lawsuit he filed against Defendant.[4] Doc. 52; Doc. 55 at 12 ¶ 73; Doc. 60 at 6 ¶ 73.

During the course of discovery in this action, Plaintiff identified the school board, Mr. Mudrick, and Ms. Nolan as the individuals employed by, or acting on behalf of, Defendant who committed the alleged discrimination and retaliation. Doc. 55 at 13 ¶ 78; Doc. 60 at 7 ¶ 78. Plaintiff also appears to allege that Dr. Nusbaum—who, again, was Principal of Topeka High School in 1989 and prepared the summary of the investigation into the sexual misconduct allegations—is one of those responsible for his not being rehired in 2016. Doc. 55 at 12-13 ¶¶ 75-77; Doc. 60 at 6 ¶¶ 75-77. In this case, Plaintiff claims compensatory damages of $75,000 for "mental and emotional pain and suffering including humiliation for not being hired for open and available positions."[5] Doc. 55 at 14 ¶ 87; Doc. 60 at 7 ¶ 87. Plaintiff also seeks an award of

---

[3] The Court notes that, in connection with the KHRC's investigation into Plaintiff's allegations, KHRC investigator Laura Gomez concluded that Plaintiff had produced "self-defeating evidence" concerning his retaliation claim—namely, a list of ten employees who Defendant rehired after those individuals had filed Title VII claims against Defendant. Doc. 55 at 14 ¶ 86; Doc. 60 at 7 ¶ 86. Plaintiff does not dispute this statement. *Id.*

[4] Although Plaintiff originally also asserted a claim for violation of his federally-protected rights pursuant to 42 U.S.C. § 1981, as acknowledged in the pretrial order—which supersedes all pleadings in this case—Plaintiff abandoned this claim during the pretrial conference. Doc. 52 at 7. Only his Title VII claims remain for disposition.

[5] Plaintiff has never sought medical treatment as a result of Defendant's alleged actions. Doc. 55 at 14 ¶ 88; Doc. 60 at 7 ¶ 88. Plaintiff claims his emotional distress damages stem from the 1989 sexual misconduct investigation. Doc. 55 at 14 ¶¶ 89-90; Doc. 60 at 7 ¶¶ 89-90. Plaintiff's concern is that his friends and acquaintances—specifically, the men he plays basketball with—were aware of the investigation report. Doc. 55 at 14-15 ¶ 91; Doc. 60 at 7 ¶ 91. Plaintiff stated these individuals learned about it in 1991 from new stories but "they just can't believe it" and said "'[y]ou wouldn't do anything like this.'" *Id.*

$209,500 in front pay. Doc. 55 at 15 ¶ 94; Doc. 60 at 7 ¶ 94. Defendant now moves for summary judgment on all claims or, in the alternative, for partial summary judgment on Plaintiff's claims for compensatory damages and front pay.[6] Doc. 54.

## II.    STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

Plaintiff asserts two claims under Title VII in this action: (1) discrimination for failure-to-hire and (2) retaliation. Doc. 52. Again, Plaintiff's claims are premised on his allegations that Defendant refused to rehire him based on his race and in retaliation for a prior lawsuit. *Id.* Defendant moves for summary judgment on both claims, arguing: (1) Plaintiff cannot establish a prima facie failure-to-hire case under Title VII, and, even if he could, Plaintiff cannot prove that Defendant's legitimate, nondiscriminatory reasons for refusing to reconsider its 2001 decision not

---

[6] The Court notes that Defendant previously filed another motion for summary judgment in this case, in which it argued Plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel and by the applicable statutes of limitations. Docs. 28-29. Defendant also raised many of the same arguments it makes here. *Id.* This motion was denied in part and stricken in part by Judge John Lungstrum. Doc. 43. In his October 19, 2018 Memorandum and Order, Judge Lungstrum denied Defendant's motion as to its res judicata, collateral estoppel, and statute of limitations arguments. *Id.* at 7-10. Judge Lungstrum struck Defendant's other arguments as premature pursuant to the scheduling order entered in this case. *Id.* at 6-7. However, Judge Lungstrum advised Defendant that it could refile the stricken portions of its motion at a later date after full discovery. *Id.* at 7. Defendant accordingly re-raises its previously-stricken arguments here for the Court's disposition.

to rehire him were mere pretext for discrimination; and (2) Plaintiff likewise cannot establish a prima facie case for Title VII retaliation, and, regardless, Plaintiff again cannot show pretext. Doc. 55. And, although arguing the Court should dismiss Plaintiff's entire case for the above-mentioned reasons, Defendant also moves in the alternative for partial summary judgment on Plaintiff's claims for compensatory damages and front pay. *Id.* For the following reasons, the Court agrees with Defendant and finds that summary judgment is warranted on both Plaintiff's failure-to-hire claim and his retaliation claim.[7]

### A.      Failure-to-Hire

Plaintiff claims Defendant violated Title VII when it failed to reconsider its August 2001 decision not to rehire him. Title VII failure-to-hire claims are analyzed under the *McDonnell Douglas* burden-shifting scheme.[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (enunciating burden-shifting framework in context of Title VII claim for failure-to-hire); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2000) (applying burden-shifting analysis to Title VII failure-to-hire claim).

The first prong of the *McDonnell Douglas* framework requires the plaintiff to establish his prima facie case. *McDonnell Douglas*, 411 U.S. at 802. "The burden at this stage is not onerous." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (internal quotations omitted). Second, once a prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse action. *McDonnell Douglas*, 411 U.S. at 802.

---

[7] Given this holding, the Court does not address the parties' arguments in connection with Defendant's alternative request for partial summary judgment (i.e., with respect to the merits of Plaintiff's claims for compensatory damages and front pay).

[8] The Court notes that *McDonnell Douglas*'s burden-shifting scheme applies only where evidence of discrimination is circumstantial, rather than direct. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). Neither party appears to dispute the applicability of the *McDonnell Douglas* framework to Plaintiff's failure-to-hire claim and, regardless, the Court finds that Plaintiff has not presented any direct evidence of discrimination so as to justify deviating from that framework.

This burden is one of production, not persuasion; it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* framework in the context of an ADEA action). Third, provided the defendant satisfies the second step, the plaintiff will avoid summary judgment only if he can show that the defendant's proffered reason for its conduct was mere pretext for intentional discrimination. *McDonnell Douglas*, 411 U.S. at 804.

As set forth above, in its motion for summary judgment, Defendant first contends that Plaintiff cannot establish a prima facie case for failure-to-hire. Doc. 55. Defendant next contends that, even if Plaintiff could establish his prima facie case, he cannot show Defendant's legitimate, nondiscriminatory reasons for its refusal to reconsider its no-rehire decision as to Plaintiff were mere pretext for discrimination. *Id.* Pursuant to the *McDonnell Douglas* burden-shifting scheme, the Court first analyzes whether Plaintiff can establish his prima facie case.

### 1.       Prima Facie Case

To establish a prima facie case for failure-to-hire under Title VII, a plaintiff must show: (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the defendant was seeking applicants; (3) despite being qualified, he was rejected; and (4) after his rejection, the position remained open and the defendant continued to seek applicants from persons with his qualifications. *Garrison*, 428 F.3d at 937. Here, Defendant primarily contends that Plaintiff cannot make his prima facie showing because he cannot establish that he was qualified for the position(s) he sought so as to meet the second element of his case.[9] The Court therefore confines its analysis to this element.

---

[9]   In its motion, Defendant also argues Plaintiff cannot meet the fourth element of his prima facie case (at least with respect to the special education teaching position) because Defendant ultimately filled that position with a qualified applicant belonging to the same protected class as Plaintiff (Mr. Moore, who is African-American). Doc. 55 at 18-19. But, as Plaintiff points out in his opposition, a plaintiff is not required to show that the defendant hired someone

The Court finds that Plaintiff has met his prima facie burden. As set forth above, Plaintiff's burden at this stage is not onerous—only a minimal showing is necessary to make a prima facie case. *See Tabor*, 703 F.3d at 1216; *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (1999). Turning to the second element—whether Plaintiff was qualified—the Court finds that, based on the record, Plaintiff can show that he meets the objective criteria for a teaching position with Defendant. Plaintiff reapplied for a substitute teaching position in July 2016. Doc. 55 at 9 ¶ 47; Doc. 60 at 5 ¶ 47. The requirements for employment as a substitute teacher with Defendant include that the candidate possess a current teaching certificate or be eligible to obtain one. Doc. 60 at 10 ¶ 18; Doc. 61 at 6 ¶ 18. The parties do not dispute that Plaintiff possesses a teaching certificate—indeed, Defendant concedes in its motion that Plaintiff "may have met the technical job requirements on paper" (Doc. 55 at 18)—and the Court accordingly finds that he meets the objective qualifications for the position sought.

Based on the record, the decision not to extend an offer of employment to Plaintiff for the position appears to have been a subjective decision unrelated to his technical qualifications for employment. Dr. Harrington, who interviewed Plaintiff for a special education teaching position with Defendant, made a subjective assessment that another candidate (Mr. Moore) was better suited for the position than Plaintiff due to his superior qualifications, enthusiasm, knowledge, and performance in the interview process.[10] Doc. 55 at 9-10 ¶ 52; Doc. 60 at 5 ¶ 52. And Ms. Marstall, who also interviewed Plaintiff in 2016 for teaching positions within the district and was unaware

---

outside his protected class in order to meet his prima facie burden. Doc. 60 at 15; *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). And Defendant concedes this point in its reply brief. Doc. 61 at 20. Therefore, the Court does not consider this fourth element to be contested for purposes of summary judgment.

[10] Although Dr. Harrington later learned that Plaintiff was not eligible for rehire with Defendant, there is no evidence that she possessed this information at the time she recommended Mr. Moore over Plaintiff. Doc. 55 at 9 ¶ 50; Doc. 60 at 5 ¶ 50.

of his employment history with Defendant, actually passed Plaintiff's application on for consideration for a full-time teaching position. Doc. 60 at 8 ¶ 5; Doc. 61 at 3 ¶ 5. It was only after his application reached individuals with knowledge of the 1989 sexual misconduct allegations and the August 2001 no-rehire decision that Plaintiff's bid for employment was rejected.

Although such subjective judgments may well provide valid cause not to hire an individual, they do not enter the court's calculus at this stage of the analysis. Subjective criteria are not to be considered a part of the prima facie evaluation in a summary judgment proceeding. *See Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 342 (10th Cir. 1982) (agreeing that "[o]bjective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process"). Allowing consideration of subjective criteria at this stage "would in many instances collapse the three step [*McDonnell Douglas*] analysis into a single initial step at which all issues would be resolved," which "would defeat the purpose underlying the *McDonnell Douglas* process." *Id.* (quoting *Lynn v. Regents of the Univ. of Cal.*, 656 F.2d 1337, 1344 (9th Cir. 1981)). Indeed, "[t]he relevant inquiry at the prima facie stage . . . is not whether an employee is able to meet <u>all</u> the objective criteria adopted by the employer, but whether the employee has introduced some evidence that he possesses the objective qualifications necessary to perform the job sought." *Barnett v. Boeing Co.*, 173 F. Supp. 2d 1125, 1132 (D. Kan. 2001) (emphasis added). Accordingly, putting aside any subjective criteria considered in the hiring process, the Court finds that the uncontroverted evidence allows for a prima facie showing that Plaintiff was qualified for the 2016 teaching position(s). Plaintiff can establish his prima facie case for failure-to-hire in violation of Title VII, satisfying the first prong of the *McDonnell Douglas* analysis.

## 2. Pretext

Because the Court finds that Plaintiff can establish his prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its refusal to reconsider its August 2001 no-rehire decision as to Plaintiff. In this case, Defendant asserts it had legitimate reasons for its refusal to rehire Plaintiff: specifically, the negative performance evaluations contained in Plaintiff's personnel file and the information related to the 1989 investigation into sexually-inappropriate comments Plaintiff made to female students under his supervision. Because Defendant has come forth with legitimate, nondiscriminatory reasons for its actions, Plaintiff will therefore avoid summary judgment only if he can show Defendant's explanation was mere pretext for discrimination.

To show pretext, a plaintiff must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's proffered reason for its action such that a reasonable factfinder could find that reason unworthy of credence and infer the defendant did not act for the asserted reason. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (internal quotations omitted). This may be accomplished through (1) evidence that the defendant's stated reason for its action was false, (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances, or (3) evidence that the plaintiff was treated differently than other similarly-situated employees who violated work rules of comparable seriousness. *Id.*

In analyzing pretext, the court must examine the facts as they appear to the individual making the employment decision; the court's role is not to "second guess" a defendant's business judgment. *Id.*; *see also Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[O]ur role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,'

second guessing employers' honestly held (even if erroneous) business judgments."). Nor is the court's role to ask whether the decision was wise, fair, or correct. *Dewitt*, 845 F.3d at 1307. Rather, the court must determine whether the defendant honestly believed the legitimate, nondiscriminatory reason it gave for its conduct and acted in good faith on that belief. *Id.* Mere conjecture that the defendant's explanation is pretext is not enough to justify denial of summary judgment. *Id.*

Here, the Court finds that no reasonable jury could determine that Defendant's legitimate reasons for its actions were mere pretext and, therefore, the Court grants summary judgment in favor of Defendant. Here, Plaintiff argues pretext can be shown by virtue of Defendant's "blind rejection" of his 2016 application for employment and refusal to consider changes in his work history and education. Doc. 60 at 18-21. But the uncontroverted evidence supports Defendant's proffered reasons for its decision. As noted above, it is uncontroverted that, during his prior employment with Defendant, Plaintiff received a number of critical evaluations. Doc. 55 at 2-4 ¶¶ 2, 11-13, 15-17, 19; Doc. 60 at 2-3 ¶¶ 2, 11-13, 15-17, 19. The evaluations note concerns related to his professionalism, communication skills, and inappropriate comments to students. *Id.* In one evaluation, Principal Dr. Barbara Davis stated that, in her 27 years as an administrator, she found Plaintiff's performance as a P.E. teacher to be less than that of other teachers in the areas of professional skills, interpersonal relationships, and especially personal characteristics. Doc. 55 at 3-4 ¶ 13; Doc. 60 at 3 ¶ 13. And, in another, Principal Dr. Abigail Calkin requested that Plaintiff be transferred to a different school due to doubts he could conduct a P.E. program that met students' needs. Doc. 55 at 4 ¶ 16; Doc. 60 at 3 ¶ 16.

Most importantly, however, the uncontroverted evidence establishes that Plaintiff was removed from his position as a girls' basketball coach following an investigation into sexually-

charged comments Plaintiff made to a female student under his supervision (and which were corroborated by another student). Doc. 55 at 2-3 ¶¶ 3-4, 8; Doc. 60 at 2 ¶¶ 3-4, 8. Two other female students on the basketball team also reported inappropriate comments by Plaintiff. Doc. 55 at 2 ¶ 6; Doc. 60 at 2 ¶ 6. Defendant was entitled to rely on its judgment in making the decision to refuse to rehire Plaintiff based on his negative employment history. Whether Defendant's proffered reasons were fair or correct is immaterial so long as Defendant honestly believed those reasons and acted in good faith upon those beliefs. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007) (noting that a plaintiff cannot establish pretext merely by showing "that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment"). And there is no evidence that Defendant's concerns regarding Plaintiff's negative record were not believed and in good faith. In fact, Plaintiff himself agrees that if a school district has an indication that a teacher has propositioned or asked out a student, this would provide reason to not want to hire him. Doc. 55 at 3 ¶ 7; Doc. 60 at 2 ¶ 7.

Finally, the Court notes that, for at least one of the positions for which Plaintiff applied in 2016, Defendant ultimately hired a member of Plaintiff's protected class. Doc. 55 at 9 ¶¶ 52-53; Doc. 60 at 5 ¶¶ 52-53. Indeed, Plaintiff included in his own recitation of the purported uncontroverted material facts that Defendant maintains a diversity initiative whereby it is committed to increasing the ratio of minority teachers to students in the school district. Doc. 60 at 10 ¶ 23; Doc. 61 at 7 ¶ 23. These facts severely undercut Plaintiff's argument that Defendant's reasons for its refusal to rehire him were pretext for discriminatory intent and, indeed, undermine the entire theory of this claim. Finding, therefore, that Plaintiff has not shown that Defendant's

stated reasons for its challenged employment action were mere pretext, the Court grants Defendant's motion for summary judgment as it pertains to Plaintiff's failure-to-hire claim.

## B.    Retaliation

The Court now turns to Plaintiff's claim for Title VII retaliation. Like his claim for failure-to-hire, *see supra* Part III.A, the Court analyzes Plaintiff's retaliation claim under the *McDonnell Douglas* burden-shifting framework.[11] *See Tabor*, 703 F.3d at 1216 (applying burden-shifting analysis to Title VII retaliation claim). First, therefore, the plaintiff must establish a prima facie case of retaliation. *Id.* Second, if the plaintiff establishes his prima facie case, the burden shifts to the defendant to offer a legitimate, nonretaliatory reason for its actions. *Id.* at 1216-17. Third, if the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason for its actions was mere pretext. *Id.* at 1217.

In its motion for summary judgment, Defendant first argues Plaintiff cannot establish a prima facie case so as to meet the first step of the *McDonnell Douglas* inquiry. Doc. 55. Second, Defendant again argues that, even if Plaintiff could establish his prima facie case, he cannot show Defendant's legitimate, nonretaliatory reasons for its conduct were mere pretext. *Id.* For the following reasons, the Court agrees with Defendant.

### 1.    Prima Facie Case

The Court first analyzes whether Plaintiff can establish his prima facie case. To prove a prima facie case for retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) he suffered a material adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d

---

[11] As with Plaintiff's failure-to-hire claim, the parties do not appear to dispute the applicability of the *McDonnell Douglas* framework to Plaintiff's retaliation claim.

510, 514 (10th Cir. 2015). The Court notes that Plaintiff appears to have limited this claim to his allegation that Defendant retaliated against him due to his 1991 lawsuit. Doc. 55 at 12 ¶ 73; Doc. 60 at 6 ¶ 73 ("Well, there isn't any other reason why. That is the reason why.").

Defendant appears to agree that Plaintiff can satisfy the first two elements of his prima facie case. First, Defendant does not appear to dispute that Plaintiff engaged in protected activity. Second, Defendant also does not appear to dispute that its decision not to rehire Plaintiff in 2016 constituted a material adverse employment action, satisfying the second element of Plaintiff's prima facie case. Defendant <u>does</u> dispute, however, whether there was a causal connection between Plaintiff's protected activity (which, again, he identifies as filing the 1991 lawsuit) and its refusal to reconsider its no-rehire decision.

A plaintiff may establish a causal connection between protected activity and an adverse action by proffering evidence of circumstances justifying an inference of retaliatory motive, such as a protected activity closely followed by adverse action. *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). Generally, "the closer [the challenged action] occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). The Tenth Circuit has held that a three-month period, standing alone, is insufficient to establish a causal nexus between protected activity and an adverse employment action. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *cf. Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding that a one-and-a-half-month period between protected activity and adverse action may, by itself, establish causation), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194-97 (10th Cir. 1998).

Based on its review of the uncontroverted evidence, the Court agrees with Defendant that Plaintiff cannot satisfy this third element of his prima facie case. First, Plaintiff's protected activity

is too attenuated to permit an inference of retaliation based on temporal proximity alone. At the time of his 2016 application, it had been 25 years since Plaintiff filed his 1991 lawsuit against Defendant. And even if the Court were to consider Plaintiff's retaliation claim through the lens of his 2004 or 2010 lawsuits (and, again, Plaintiff's response to Defendant's motion makes clear he premises this claim only on his 1991 lawsuit), those lawsuits are still simply too old to suggest a causal link between the protected activity and the 2016 decision not to rehire Plaintiff.

Second, Plaintiff has failed to present any evidence suggesting that his protected employment activity of filing the 1991 lawsuit—or, again, his filing of any of the three lawsuits preceding this current action—caused Defendant's decision not to rehire him. Indeed, in the immediate wake of Plaintiff's 1991 lawsuit, Defendant did not take any disciplinary or other action against Plaintiff and, in fact, continued to employ him for five years until his resignation in 1996. Doc. 55 at 7 ¶ 34; Doc. 60 at 4 ¶ 34. During the course of discovery, when prompted to identify the individuals who he believed had discriminated or retaliated against him, Plaintiff listed the school board, Mr. Mudrick (Defendant's outside counsel), and Ms. Nolan (Defendant's current General Director of Human Resources). Doc. 55 at 13 ¶ 78; Doc. 60 at 7 ¶ 78. Plaintiff also appears to allege that Dr. Nusbaum—who prepared the summary of the investigation into the 1989 sexual misconduct allegations—is one of those responsible for his not being rehired. Doc. 55 at 12-13 ¶¶ 75-77; Doc. 60 at 6 ¶¶ 75-77. Plaintiff primarily relies on vague allegations of comments allegedly made by Mr. Mudrick during a 2009 school board executive session as evidence of retaliation. Plaintiff's claim fails for multiple reasons. First, such vague allegations of retaliatory animus are insufficient to defeat summary judgment. Second, and more importantly, with respect to Mr. Mudrick, Mr. Nusbaum, and the school board, Plaintiff cannot show a causal nexus between any alleged conduct and the 2016 decision not to rehire him because neither Mr. Mudrick,

Mr. Nusbaum, nor the school board made that decision. Rather, it was Ms. Nolan who decided not to reverse the August 2001 determination that Plaintiff should not be rehired. Doc. 55 at 14 ¶ 84; Doc. 60 at 7 ¶ 84. And with respect to Ms. Nolan, Plaintiff has offered zero evidence that her decision was motivated by retaliatory intent. Plaintiff's entire retaliation claim ultimately appears to be premised on a mere hunch—when asked in his deposition why he believed Defendant retaliated against him due to his 1991 lawsuit, Plaintiff replied that it was just "[t]he fact that I'm not being rehired back." Doc. 55 at 12 ¶ 74; Doc. 60 at 6 ¶ 74.

Finally, the Court also notes that, in connection with the administrative investigation into Plaintiff's allegations, Plaintiff apparently produced a list of ten employees who Defendant rehired <u>after</u> those individuals had filed Title VII claims against Defendant—evidence that the KHRC investigator characterized as "self-defeating" with respect to Plaintiff's retaliation claim. Doc. 55 at 14 ¶ 86; Doc. 60 at 7 ¶ 86. For all of these reasons, the Court finds that Plaintiff cannot satisfy his prima facie burden because he cannot establish the third element of his case: a causal connection between his protected activity and Defendant's refusal to reconsider the no-rehire decision. Summary judgment is warranted on Plaintiff's Title VII retaliation claim on this basis alone.

### 2. Pretext

Because Plaintiff cannot establish his prima facie case for Title VII retaliation, summary judgment is appropriate, and the Court need not proceed with the remainder of the *McDonnell Douglas* analysis. But—in accordance with its analysis in Part III.A.2, *supra*—even assuming Plaintiff could establish all of the elements of his prima facie case, his retaliation claim nonetheless fails because Defendant has proffered legitimate, nonretaliatory reasons for its refusal to reconsider its August 2001 no-rehire decision (namely, Plaintiff's negative evaluations and the 1989 sexual

misconduct investigation), and Plaintiff has failed to demonstrate that the proffered reasons for that decision were mere pretext. Plaintiff does not come forward with any evidence suggesting Defendant possessed any retaliatory intent and, indeed, the evidence—specifically, Plaintiff's continued employment with Defendant after his 1991 lawsuit and, as discussed above, the fact that Defendant rehired ten different employees who previously filed Title VII claims against Defendant—weighs strongly against such a finding. The Court therefore finds that summary judgment is proper for this additional reason.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 54) is GRANTED.

IT IS SO ORDERED.

Dated: July 24, 2019                    /s/  *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE